UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTONIEL TYLER PENNINGS,<br><br>                              Plaintiff,<br><br>v.<br><br>BARRERA, et al.,<br><br>                              Defendants. | Case No.:  16cv582-JLS (MDD)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTION TO DISMISS [ECF No. 12]** |

This Report and Recommendation is submitted to the United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff Otoñiel Tyler Pennings ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis*.  (ECF Nos. 1, 6).  On March 7, 2016, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1).

Plaintiff's complaint sets forth various claims against four named individuals working at the George Bailey Detention Facility ("GBDF") alleging that they violated his civil rights by: (1) retaliating against him in violation of the First Amendment; (2) imposing cruel and unusual conditions of confinement in violation of the Eighth Amendment; (3) treating him inhumanely in violation of the Fourteenth Amendment's Equal Protection Clause; (4) failing to provide Plaintiff his due process rights in violation of the Fourteenth Amendment; (5) using excessive force against him; (6) assaulting and battering him; (7) providing inadequate medical care; (8) providing negligent medical care; and (9) intentionally inflicting emotional distress upon him. (*See id.*).

On October 12, 2016, Defendants Stapleton and Benjamin filed a motion to dismiss some of the claims against them. (ECF No. 12). Defendants contend that: (1) Plaintiff's First Amendment retaliation claim against Defendant Benjamin should be dismissed because Defendant Benjamin did not "prevent[] Plaintiff from engaging in protected conduct[;]" (2) Plaintiff's Eighth Amendment claim against both Defendants should be dismissed because Plaintiff did not allege that Defendants caused the unsanitary living conditions; (3) Plaintiff's denial of religious accommodations claim should be dismissed because Plaintiff did not allege "facts indicating that the responding defendants denied him the kosher meals, or that they were necessary for him to practice" his religion;[1] (4) Plaintiff's destruction of property claim against Defendant Stapleton must be

_____

[1] Defendants improperly construe Plaintiff's Fourteenth Amendment Equal Protection Clause claim as a denial of religious accommodations claim under the First Amendment.

dismissed because "Plaintiff does not allege the absence of an administrative remedy to challenge property destruction[;]" (5) Plaintiff's intentional infliction of emotional distress claim against Defendant Stapleton should be dismissed because he does not allege extreme and outrageous conduct; and (6) the state law claims should be dismissed as untimely. (ECF No. 12-1 at 3-7).

On October 13, 2016, this Court ordered Plaintiff to file a Response in Opposition to Defendants' Motion to Dismiss on or before November 3, 2016, and Defendants to file a reply on or before November 10, 2016. (ECF No. 13). On November 2, 2016, Plaintiff requested a 90-day continuance to file his opposition to Defendants' motion to dismiss in a duplicative action. (*Pennings v. San Diego Sheriff's Dep't, et al.*, S.D. Cal. Civil Case No. 16cv2318-CAB-DHB, ECF No. 7). On January 10, 2017, District Judge Bencivengo closed Plaintiff's duplicative action and denied Plaintiff's motion for a continuance without prejudice to be re-filed in this case. (*Id.* at ECF No. 11). Plaintiff did not re-file the motion as directed, but the Court nevertheless amended the briefing schedule and ordered Plaintiff to file a Response in Opposition to Defendants' Motion to Dismiss on or before February 8, 2017, and Defendants to file a reply on or before February 15, 2017. (ECF No. 17). The Court granted Plaintiff one continuance and ordered him to file a Response in Opposition to Defendants' Motion to Dismiss on or before March 16, 2017. (ECF Nos. 21, 22). On March 17, 2017, the date of his signature, Plaintiff filed a Response in Opposition to Defendants' Motion to dismiss. (ECF No. 25). The Court will consider Plaintiff's opposition even though it was not timely filed.

Plaintiff opposes the motion to dismiss on the grounds that: (1) Defendant Benjamin retaliated against Plaintiff by ordering he be moved "to

a dirty, feces-covered cell, in a module used as 'punishment[;]'" (2) Defendant Stapleton intentionally inflicted emotional distress by calling Plaintiff derogatory names and assaulting him because of his religion; and (3) his state law claims are timely because he mailed his Complaint on February 26, 2016.[2]  (*Id.* at 5-9).

Defendants reply that Plaintiff's Complaint should be dismissed because: (1) Plaintiff failed to timely file his opposition; (2) Plaintiff provided no proof that his Complaint was mailed on February 26, 2016; and (3) Plaintiff's Complaint "consist[s] of mere conclusions in the form of allegations . . . . [that] fall woefully short of establishing a claim against Defendants for any constitutional violation."  (ECF No. 26 at 2-5).

## II.  <u>BACKGROUND FACTS</u>

The facts are taken from Plaintiff's Complaint and are not to be construed as findings of fact by the Court.

Plaintiff's claims arise from a series of events that occurred while Plaintiff was held at GBDF as a subpoenaed witness for an evidentiary hearing in the criminal case of another state prisoner.  (ECF No. 1 at 3). Plaintiff was placed in an administrative segregation unit ("Module 5A") and immediately "noticed unconstitutional living conditions . . . and began the 'grievance process.'"  (*Id.*).  Plaintiff filed grievances alleging cruel and unusual living conditions, lack of access to the law library and law books, failure to provide three hours of recreation time, failure to provide a kosher diet or religious services and reading material and that Defendants were posting "excessive personal and private information" on cell doors.  (*Id.* at 4).

---

[2] Plaintiff's opposition also includes several other claims that Defendants' motion to dismiss do not challenge.

Plaintiff's Complaint describes his claim in nine counts as follows:

In count one, Plaintiff contends that Defendants Barrera, Stapleton and Benjamin violated his First Amendment right to freedom of speech by retaliating against him for filing grievances. (*Id.* at 4-6).

In count two, Plaintiff contends that Defendants Barrera, Sanchez, Stapleton and Benjamin imposed cruel and unusual conditions of confinement in violation of the Eighth Amendment. (*Id.* at 7-8).

In count three, Plaintiff contends Defendants Barrerra and Sanchez violated his equal protection rights when they treated him differently than other inmates and made "racially insensitive slurs" targeted at his Jewish faith. (*Id.* at 8-9).

In count four, Plaintiff contends that Defendants Benjamin, Barrera, Sanchez and Stapleton violated his due process rights under the Fourteenth Amendment. (*Id.* at 9; ECF No. 1-1 at 1).

In count five, Plaintiff contends that on November 17, 2014, Defendants Benjamin, Stapleton, Barrera and Sanchez used excessive force upon him. (ECF No. 1-1 at 1-3).

In count six, Plaintiff contends Defendants Barrera, Sanchez and Stapleton assaulted and battered him during the excessive force incident explained in count six. (*Id.* at 5).

In count seven, Plaintiff contends that he received inadequate medical care from an unknown person treating Plaintiff's injuries sustained during the assault, battery and excessive force incident. (*Id.* at 5-6).

In count eight, Plaintiff contends that some unknown person committed medical malpractice and was medically negligent when treating Plaintiff's injuries. (*Id.* at 6).

16cv582-JLS (MDD)

In count nine, Plaintiff contends Defendants Barrera, Sanchez, Stapleton and Benjamin intentionally inflicted emotional distress upon Plaintiff. (*Id.*).

## III. <u>STANDARD OF REVIEW</u>

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). The pleader must provide the Court with "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

A *pro se* pleading is construed liberally on a defendant's motion to dismiss for failure to state a claim. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty. Oregon*, 88 F.3d 804, 807 (9th Cir. 1996)). The *pro se* pleader must still set out facts in his complaint that bring his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies

16cv582-JLS (MDD)

cannot be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## IV.  **DISCUSSION**

The Court will only address challenged claims brought against Defendants Benjamin and Stapleton.  Those claims are: (1) count one, First Amendment retaliation against Defendant Benjamin; (2) count two, Eighth Amendment cruel and unusual punishment against both Defendants; (3) count three, Fourteenth Amendment violation of the Equal Protection Clause against Defendant Benjamin; (4)  count four, Fourteenth Amendment violation of due process against Defendant Stapleton; (5) count nine, intentional infliction of emotional distress against Defendant Stapleton; and (6) the timeliness of Plaintiff's state law claims.  (*See* ECF Nos. 1, 12-1).

## A.  **First Amendment Retaliation Claim**

In count one, Plaintiff alleges that Defendant Benjamin retaliated against Plaintiff in violation of the First Amendment for filing grievances. (ECF No. 1 at 4).  Plaintiff alleges that Defendant Benjamin was in charge of the grievances filed in Plaintiff's housing unit and was required to respond, process, investigate and resolve grievances, or forward them to someone who could address and resolve the grievances.  (*Id.* at 4).

After Plaintiff began filing grievances, Defendant Benjamin "came to Plaintiff's cell screaming to stop filing grievances and if not, she would have him moved to module 5C" where mentally ill inmates are housed and explained that no grievance would fix the inadequate living conditions.  (*Id.* at 5).  Plaintiff continued to file grievances and began helping other inmates file grievances.  (*Id.*).   In retaliation, Defendant Benjamin instructed others to move Plaintiff to Module 5C.  (*Id.*).  Module 5C "had a constant smell of

feces coming out of the ventilation system and continued banging noises." (*Id.*).

Plaintiff filed a retaliation grievance against Defendant Benjamin for moving him to Module 5C, alleging he was moved "for the sole purpose of separating Plaintiff from other inmates he had been assisting with their grievances and to deter Plaintiff and other inmates from continuing to redress their grievances" and alleging that Defendant Benjamin refused to log inmate grievances. (*Id.*).

Defendants assert that count one must be dismissed because Plaintiff did not allege that Defendant Benjamin's conduct was retaliatory, her alleged conduct did not prevent Plaintiff from filing grievances and there is no due process right for prisoners to file grievances.[3] (ECF No. 12-1 at 3-4).

The First Amendment protects against "deliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights. *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989). A prisoner suing prison officials for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

---

[3] Plaintiff also alleges Defendant Stapleton acted in retaliation, however Defendants did not respond to Plaintiff's allegation that Defendant Stapleton destroyed Plaintiff's property in retaliation for filing grievances. (*See* ECF No. 12-1).

1995); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

In *Rhodes v. Robinson*, the Ninth Circuit set forth five basic elements of a viable claim of First Amendment retaliation: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 n.11 (9th Cir. 2005)).

### 1. Adverse Action Against an Inmate

The first element of the *Rhodes* pleading standard requires Plaintiff to make an assertion that a state actor took some adverse action against him. *Rhodes*, 408 F.3d at 567-68. Plaintiff contends that Defendant Benjamin threatened to move Plaintiff to Module 5C if he continued to file grievances and later ordered Plaintiff be moved as a specific consequence of his continued filing of grievances. (ECF No. 1 at 5). The cell Plaintiff was placed in was dirty and covered in feces. (ECF No. 25 at 5). Plaintiff also alleges that Defendant Benjamin retaliated by "refus[ing] to correctly process all . . . grievances." (ECF No. 1 at 5); (*see also* ECF No. 25 at 6).

The threat that Defendant Benjamin made and the later move to Module 5C, which Plaintiff characterized as a less desirable living situation, provide sufficient facts to allege the required adverse action. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("[T]he mere threat of harm can be adverse action . . . ."); *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (allowing a retaliation claim to proceed when a grievance decider made an implicit threat of retaliation regarding use of the grievance process); *Puckett*

*v. Sweis*, No. 2:15-cv-0602-AC P, 2016 WL 632795, at *4 (E.D. Cal. Feb. 16, 2016) ("[A]t the pleading stage, 'allegations of harm [are] sufficient to ground a First Amendment retaliation claim without discussing whether that harm had a chilling effect."); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative segregation for filing grievances is an adverse action); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status in retaliation constitutes adverse action). Defendant Benjamin's alleged failure to properly process grievances also satisfies the first element of the *Rhodes* pleading standard. *Harbridge v. Schwarzenegger*, No. CV 07-4486-GW(SH), 2009 U.S. Dist. LEXIS 129379, at *36 (C.D. Cal. Aug. 13, 2009) (finding that the plaintiff satisfied element one of the *Rhodes* standard where he alleged that his prisoner grievances were not properly processed and his complaints were not adequately investigated). Accordingly, the first element of the *Rhodes* pleading standard is met. *See Rhodes*, 408 F.3d at 568 (arbitrary confiscation and destruction of property and initiation of prison transfer are adverse actions).

### 2. Because of

The second element of the *Rhodes* pleading standard requires Plaintiff to make an assertion that a state actor took some adverse action against an inmate *because* he exercised his First Amendment right. *Rhodes*, 408 F.3d at 567-68. Plaintiff alleges he was moved to Module 5C at the behest of Defendant Benjamin and that his grievances were not properly processed "because not only did Plaintiff continue to file grievances, but started assisting other inmates to file their grievances." (ECF No. 1 at 5; *see* ECF No. 25 at 6). Plaintiff also contends Defendant Benjamin had him moved "for the sole purpose of separating Plaintiff from other inmates he had been

assisting with their grievances and to deter Plaintiff and other inmates from continuing to redress their grievances." (ECF No. 1 at 5). Therefore, Plaintiff satisfies the second element of the *Rhodes* pleading standard.

### 3. Prisoner's Protected Conduct

The third element of the *Rhodes* pleading standard requires Plaintiff to show he exercised protected conduct. *Rhodes*, 408 F.3d at 567-68. Plaintiff alleges that Defendant Benjamin's actions "violated Plaintiff's First Amendment Rights by preventing an avenue to seek actual relief for his grievances." (ECF No. 1 at 6). This satisfies the third element of the *Rhodes* pleading standard. *See Rhodes*, 408 F.3d at 567 ("of fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances'").

### 4. Chilled First Amendment Rights

The fourth *Rhodes* pleading standard element requires Plaintiff to show that the harm chilled the exercise of his First Amendment right. *Rhodes*, 408 F.3d 567-68. A plaintiff is not required to allege "a *total* chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced." *Id.* at 568 (emphasis in original). The Court must ask "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal citations and quotations omitted).

Defendants contend that "the complaint does not allege facts that demonstrate Benjamin's alleged conduct prevented Plaintiff from using the grievance process, thereby having a chilling effect on his First Amendment rights. To the contrary, Plaintiff admits he continued to file grievances and assisted other inmates in filing grievances as well." (ECF No. 12-1 at 4).

Defendants are incorrect. The face of Plaintiff's Complaint alleges that his First Amendment rights were chilled. (ECF No. 1 at 5). Plaintiff specifically alleges that Defendants retaliated against him for the sole purpose of "deter[ring] Plaintiff and other inmates from continuing to redress their grievances." (*Id.*). Plaintiff's admission that he continued to file inmate grievances even after Defendants retaliated against him does not negate a chilling effect. *See Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate failed to state retaliation claim where, after alleged adverse action, plaintiff nonetheless had been able to file inmate grievances and a lawsuit); *see also Martinez v. Muniz*, No. 14-cv-03753-HSG (PR), 2016 WL 3208398, at *13 (N.D. Cal. June 10, 2016) (finding that a plaintiff's continued filing of inmate appeals does not negate the existence of a chilling effect). Transferring an inmate to a less desirable living situation and improperly handling grievances would "chill or silence a person of ordinary firmness." *Mendocino Evtl. Ctr.*, 192 F.3d at 1300. Therefore, Plaintiff satisfies the fourth element of the *Rhodes* pleading standard despite the fact Plaintiff continued to file inmate appeals because the chilling effect need not be so great as to totally silence the inmate.

## 5. Action Did Not Reasonably Advance a Legitimate Correctional Goal

The fifth and final element of the *Rhodes* pleading standard requires Plaintiff to make an assertion that Defendant Benjamin's actions did not advance a legitimate correctional goal. *Id.* at 567-68. Plaintiff's Complaint alleges that Defendant Benjamin told Plaintiff "no grievance will fix the problems with [the] inadequate living conditions." (ECF No. 1 at 5). This suggests that Defendant Benjamin retaliated against Plaintiff because his grievance efforts would be futile, not to support legitimate penological

interests. The Court construes Plaintiff's allegations to allege that Defendant Benjamin's conduct was "arbitrary and capricious" rather than actions that advance legitimate goals of the correctional institution that were narrowly tailored to achieve such goals. *See Rizzo*, 778 F.2d at 532 (finding that the plaintiff alleged that the defendants' actions were retaliatory and arbitrary and capricious, showing that they did not serve any legitimate correctional goal). Accordingly, Plaintiff satisfies the fifth element of the *Rhodes* pleading standard.

### 6. Conclusion

Plaintiff's Complaint satisfies the *Rhodes* pleading standard. The Court, therefore, **RECOMMENDS** that Defendants' Motion to Dismiss count one of Plaintiff's Complaint (First Amendment Retaliation) as to Defendant Benjamin be **DENIED**.

## B. Eighth Amendment Unsanitary Living Conditions

On October 14, 2014, Plaintiff was transferred to GBDF and ultimately placed in Module 5C at Defendant Benjamin's order.[4] (ECF No. 1 at 7). Module 5C houses inmates with serious mental health issues "who are known

_____

[4] Plaintiff also alleges that he was transferred to the San Diego Central Jail on October 13, 2014, where San Diego Sheriff's Deputies warned him that his life would "be made as 'miserable as possible'" and placed him in "an extremely dirty and unsanitary cell that had trash and feces spread all over the cell. (ECF No. 1 at 7). Plaintiff complained to the Sheriff's Deputies for four hours before he was moved to a clean cell. (*Id.*). The Court notes that Plaintiff's alleged unsanitary living conditions at the San Diego Central Jail are not at issue in this case. (*See id.*). Plaintiff's Complaint does not name any Defendants employed at the San Diego Central Jail and does not allege that the named Defendants were responsible for the living conditions at the San Diego Central Jail. (*See id.* at 2-3). Accordingly, the Court will only analyze the alleged unsanitary living conditions at GBDF.

to throw feces and continuously bang on their cell doors and toilets at all hours of the day." (*Id.* at 5). Plaintiff alleges that Module 5C's living conditions were unconstitutional because of the "constant smell of feces coming out of the ventilation system[,] . . . continued banging noises" and because the cell was covered in feces. (*Id.* at 5, 7; ECF No. 25 at 5). Plaintiff asserts that Defendants Benjamin and Stapleton were aware of the unsanitary living conditions and that Defendant Stapleton was blatantly indifferent to Plaintiff's complaints of unsanitary living conditions. (ECF No. 1 at 7). Defendants argue that Plaintiff's facts do not show that either Defendant Stapleton or Defendant Benjamin caused "any of these alleged experiences or conditions." (ECF No. 12-1 at 6).

The Eighth Amendment provides that prison conditions must not amount to cruel and unusual punishment. U.S. CONST. amend. VIII. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). Prison officials must provide inmates with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *Id.* at 832. A successful conditions of confinement claim must show that (1) the deprivation of the basic necessities of life is, objectively, sufficiently serious; and (2) the prison official acted with deliberate indifference. *Id.* at 834. Deliberate indifference exists where an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

"Filthy conditions can infringe on an inmate's basic human need for sanitary living conditions." *Carr v. Tousley*, No. CV-06-0125SJLQ, 2009 WL

1514661, at *22 (D. Idaho, May 27, 2009); *see Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."). Courts have recognized that proof of conditions similar to those alleged by Plaintiff may be sufficient to establish an Eighth Amendment claim. *Cagle v. Gravlin*, No. 9:09-CV-0648, 2010 WL 2088267, at *6 (N.D.N.Y. Apr. 29, 2010) (Lowe, M.J.) (finding the plaintiff's allegations that he was subjected to feces on the wall and gate sufficient to plausibly suggest that he was subjected to unconstitutional conditions of confinement), *Report and Recommendation Adopted*, 2010 WL 2087437 (N.D.N.Y. May 25, 2010) (Scrullin, S.D.J.); *Hamilton v. Conway*, No. 03-CV-527S, 2008 WL 234216, at *8-9 (W.D.N.Y. Jan. 28, 2008) (recognizing that allegations of excessive noise and inmates throwing feces in SHU may support an Eighth Amendment claim). Thus, at this stage in the proceedings, the Court **RECOMMENDS** Defendants' Motion to Dismiss count two of Plaintiff's Complaint against Defendants Benjamin and Stapleton (Eighth Amendment Cruel and Unusual Punishment) be **DENIED**.

## C. Fourteenth Amendment Equal Protection Clause Violation

Plaintiff alleges that Defendants used "disrespectful language in reference to Plaintiff's Jewish religion," intentionally made it difficult for Plaintiff to contact his attorneys and family members by giving him access to the dayroom at midnight and by turning off the telephone in the dayroom on November 17, 2014. (ECF No. 1 at 8). Plaintiff also claims that Defendant Benjamin, as a supervisor, "allowed and encouraged rampant disrespect and

retribution" against Plaintiff due to him being a "Hispanic Jew."[5]  (ECF No. 25 at 7).

Defendants' argument focuses on Plaintiff's First Amendment right to religious accommodations.  (ECF No. 12-1 at 5-6).  Defendants' argument is misplaced.  Plaintiff's Complaint alleges violations of the Equal Protection Clause.  (ECF No. 1 at 8).  While Plaintiff does explain that he was denied religious accommodations, including a kosher diet, religious services and copies of a Torah and Tanakh, he does so to explain the type of grievances he filed that resulted in Defendants' retaliation against him in count one of the Complaint and not as a separate cause of action.  (ECF No. 1 at 4).

The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all similarly situated people equally.  *See City of Cleburne v. City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "Moreover, the Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'"  *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)).  This does not mean that all prisoners must receive identical treatment and resources.  *See Cruz*, 405 U.S. at 322 n.2; *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993); *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff[] must allege facts plausibly showing that the defendants acted with

---

[5] In his Opposition to Defendants' Motion to Dismiss, Plaintiff for the first time asserts that Defendant Stapleton verbally abused him for his chosen religion.  (ECF No. 25 at 8).  The Court will not analyze whether Defendant Stapleton violated Plaintiff's Equal Protection rights because he is not listed in the Complaint's Equal Protection claim.  (*See* ECF No. 1 at 8-9).

16cv582-JLS (MDD)

an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (internal citations and quotations omitted). Discriminatory intent or purpose "implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. V. Feeney*, 442 U.S. 256, 279 (1979). The Equal Protection Clause prohibits the government from engaging in discrimination that burdens a fundamental right, such as religious freedom. *See City of Cleburne*, 473 U.S. at 440.

Plaintiff sufficiently alleges membership in a protected class because he is Jewish. (ECF No. 1 at 4, 8). Within the Equal Protection count on pages eight and nine of his Complaint, Plaintiff explains that Defendants made "racially insensitive slurs" and that Defendant Benjamin ordered others to move Plaintiff to Module 5C. (*Id.* at 9). Further, Plaintiff explains that Defendant Benjamin "allowed and encouraged rampart disrespect and retribution against Plaintiff as a practicing Jew." (ECF No. 25 at 7). Drawing all reasonable inferences in favor of Plaintiff, the Complaint also sufficiently alleges that Defendant Benjamin acted with the requisite discriminatory intent or purpose. *See Vann v. Hernandez*, No. 1:07-cv-01238-LJO-SMS PC, 2008 WL 4500230, at *2 (E.D. Cal. Oct. 6, 2008) (Jewish plaintiff showed discriminatory intent or purpose where defendants "made remarks critical of plaintiff's religion"); *Bachman v. Melo*, No. 1:05-CV-01438OWWLJOP, 2006 WL 1455443, at *2 (E.D. Cal. May 25, 2006) (Jewish homosexual plaintiff showed discriminatory intent or purpose where defendants called him a "Christ killing Jewish fag"); *Epileptic Found. v. City & County of Maui*, 300 F. Supp. 2d 1003, 1013 (D. Haw. 2003) (discriminatory

intent evident where park official used racial slur). Accordingly, at this stage in the proceedings, the Court **RECOMMENDS** that Defendants' Motion to Dismiss count three of Plaintiff's Complaint against Defendant Benjamin (Equal Protection Clause violation) be **DENIED**.

**D.  Fourteenth Amendment Due Process Violation**

Plaintiff alleges that Defendant Stapleton violated Plaintiff's due process rights by confiscating his personal property, including legal documents, original grievances, stamped envelopes, personally made drawings, books, canteen items and Plaintiff's address book. (ECF No. 1-1 at 1). Defendants argue that there is no due process right to destruction of personal property where there is an alternate remedy available.[6] (ECF No. 12-1 at 6).

Prisoners have a protected interest in their personal property under the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. *See Hudson v. Palmer*, 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982)). Neither negligent nor unauthorized intentional deprivations of property give rise to a violation of the Due Process Clause if the state provides an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 533 n.14. "In other words, only an authorized intentional deprivation of property is actionable under the Due Process Clause. Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest."

---

[6] Defendants do not challenge Plaintiff's claim that Defendant Benjamin had Plaintiff transferred to Module 5C without due process. (*See* ECF No. 12-1).

*Haraszewski v. Knipp*, No. 2:13-cv-2494 DB P, 2016 WL 6766750, at *3 (E.D. Cal. Nov. 14, 2016).

Plaintiff vaguely alleges that Defendant Stapleton illegally "confiscated Plaintiff's personal property" in retaliation for filing a Petition for Writ of Habeas Corpus. (ECF No. 1-1 at 1). "Plaintiff's allegations of wrongful, retaliatory confiscation of his personal property does not support a claim. Unauthorized, bad-faith behavior does not support a federal due process claim" if a meaningful postdeprivation remedy is available for the loss. *Chick v. Lacey*, No. 1:11-cv-01447-GBC (PC), 2012 WL 3912796, at *5 (E.D. Cal. Sept. 7, 2012) (citing *Hudson*, 468 U.S. at 533); *Hudson*, 468 U.S. at 533. The Ninth Circuit has held that "California Law provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994); *see also* Cal. Gov't Code §§ 810-895. "It is immaterial whether or not Plaintiff succeeds in redressing his loss through the available state remedies; it is the existence of these alternate remedies that bars him from pursuing a § 1983 procedural due process claim." *Hutchison v. Marshall*, No. CV 09-04540-ABC (VBK), 2011 WL 862118, at *9 (C.D. Cal. Feb. 3, 2011) (citing *Willoughby v. Luster*, 717 F. Supp. 1439, 1443 (D. Nev. 1989)).

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's violation of due process against Defendant Stapleton be **GRANTED** and Plaintiff be given leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); *Noll*, 809 F.2d at 1448-49.

**E.    Intentional Infliction of Emotional Distress**

In count nine, Plaintiff contends Defendant Stapleton intentionally inflicted emotional distress upon Plaintiff by "taunting and psychologically/verbal[ly] abus[ing] Plaintiff [for three hours] prior to

physically assaulting him."[7]  (ECF No. 1-1 at 6).  Plaintiff alleges that he was given dayroom access at 12:30 a.m. and asked to make a phone call, but the phone had been turned off.  (*Id.* at 2).  From 1:00 a.m. to 4:00 a.m., Defendant Stapleton "verbally harassed Plaintiff by calling him disrespectful names (i.e. 'bitch,' 'kike,' 'punk,' 'sewer rat,' etc.) and . . . attempted to 'psych out' the Plaintiff by flashing the overhead lights and opening/closing/clicking the front and side doors."  (*Id.* at 3).  Plaintiff claims that "[a]fter 3 hours of suffering this abuse, Plaintiff was mentally exhausted, distraught, and distressed."[8]  (*Id.*).

Defendants contend Plaintiff's claim against Defendant Stapleton's conduct should be dismissed because there generally is no recovery for "mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances."  (ECF No. 12-1 at 5) (internal quotations and citations omitted).

A claim for intentional infliction of emotional distress requires a plaintiff to prove "(1) extreme and outrageous conduct by the defendant with

---

[7] Intentional infliction of emotional distress is a state law claim.  The court has jurisdiction over Plaintiff's civil rights causes of action pursuant to 28 U.S.C. § 1331 and supplemental claims, including intentional infliction of emotional distress, pursuant to 28 U.S.C. § 1367.

[8] Plaintiff also contends that Defendant Stapleton is liable for intentional infliction of emotional distress for his alleged destruction of Plaintiff's property and that Defendant Benjamin is liable for transferring Plaintiff to Module 5C.  (ECF Nos. 1-1 at 6; 25 at 7-8).  Defendants do not challenge these allegations.  (*See* ECF No. 12-1 at 5).  Accordingly, the Court will not determine whether these claims are sufficiently plead so as to survive a motion to dismiss.

the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Doe v. Gangland Prods.*, 730 F.3d 946, 960 (9th Cir. 2013) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)).

Plaintiff properly pled a claim for intentional infliction of emotional distress against Defendant Stapleton. Plaintiff alleged that (1) Defendant Stapleton intentionally attempted to "psych out" Plaintiff by flashing lights, opening and closing doors and verbally abusing or taunting him for a period of three hours in the early morning; (2) Plaintiff suffered mental exhaustion and distress; and (3) Defendant Stapleton's conduct was the actual cause of Plaintiff's emotional distress. (ECF Nos. 1 at 3; 1-1 at 6). Thus, Plaintiff sufficiently stated a claim for intentional infliction of emotional distress against Defendant Stapleton to survive a motion to dismiss.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's intentional infliction of emotional distress claim (count nine) against Defendant Stapleton for taunting and harassing Plaintiff for three hours be **DENIED**.

## F. Timeliness

Defendants allege that Plaintiff's state claims must be dismissed as untimely pursuant to California Government Code §945.6(a)(1). (ECF No. 12-1 at 7). Defendants claim that Plaintiff failed to timely file the instant action within six months after the August 27, 2015, rejection of Plaintiff's state tort claims against Defendants Benjamin and Stapleton. (*Id.* at 7; ECF No. 12-2 at 3). Plaintiff contends that he mailed his Complaint on February

26, 2016, making his state claims timely under the mailbox rule. (ECF No. 25 at 9).

Before a state law claim can be brought in state or federal court, the California Tort Claims Act requires that a claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 945.4, 950.2; *Hernandez v. McClanahan*, 996 F. Supp. 975, 977 (N.D. Cal. 1998) (failure to present timely California tort claims bars plaintiff from bringing them in federal suit). If the claim is rejected, the claimant has six months to file a lawsuit. Cal. Gov't Code § 945.6. Under the mailbox rule, *pro se* prisoner documents are considered filed as of the date the prisoner delivers the document to prison authorities. *Houston v. Lack*, 487 U.S. 266, 275-76 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (holding that the *Houston* mailbox rule applies to § 1983 suits filed by *pro se* prisoners).

On August 27, 2015, the County of San Diego mailed Plaintiff a "Notice of Rejection of Claim." (ECF No. 12-2 at 3). The Complaint was signed by Plaintiff, a *pro se* prisoner, and the envelope was dated and signed by "Davis" on February 26, 2016. (ECF No. 1-1 at 9, 11). Under the mailbox rule, Plaintiff's Complaint was timely filed on February 26, 2016, which is five months and thirty days from the dated "Notice of Rejection of Claim." (*See* ECF Nos. 1-1; 12-2). Thus, Plaintiff's Complaint is timely and the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's state causes of action as untimely be **DENIED**.

## V. <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

16cv582-JLS (MDD)

1)    Defendants' Motion be **DENIED** as to Plaintiff's First Amendment retaliation claim against Defendant Benjamin (count one);

2)    Defendants' Motion be **DENIED** as to Plaintiff's Eighth Amendment claim against Defendants Benjamin and Stapleton (count two);

3)    Defendants' Motion be **DENIED** as to Plaintiff's Fourteenth Amendment Equal Protection Claim against Defendant Benjamin (count three);

4)    Defendants' Motion be **GRANTED** as to Plaintiff's Fourteenth Amendment Due Process claim against Defendant Stapleton and Plaintiff be given **LEAVE TO AMEND** (count four);

5)    Defendants' Motion be **DENIED** as to Plaintiff's intentional infliction of emotional distress claim against Defendant Stapleton for taunting and harassing Plaintiff for three hours (count nine); and

6)    Defendants' Motion be **DENIED** as to Plaintiff's state law claims.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the court and serve a copy on all parties by **May 12, 2017**.  The document shall be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed by **May 19, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:   April 19, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

23